UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| HELEN O'LEARY, <br>     Plaintiff, | CIVIL ACTION NO. <br> 3:13-CV-1378 (JCH) |
| v. | |
| TARGET CORP., <br>     Defendant. | DECEMBER 9, 2014 |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 25)**

Plaintiff Helen O'Leary brings this action in negligence against defendant Target Corp. ("Target"). See Complaint (Doc. No. 1). Target now moves for summary judgment. See Motion for Summary Judgment (Doc. No. 25). The Motion is denied.

**I.    FACTS**[1]

On December 11, 2011, a sunny day, Helen O'Leary was shopping at the Target store in Southington, Connecticut. Defendant's Local Rule 56(a)(1) Statement of Undisputed Facts ("Def.'s L.R. 56(a)(1) Stmt.") ¶ 1. At approximately 5:28 p.m., as O'Leary passed the checkout counters, she slipped in a puddle of water approximately six to eight inches in diameter. Id. ¶¶ 3, 6. The injuries that she sustained have caused her harm, including pain in her head, back, shoulder, and leg. See Complaint (Doc. No. 1-1) ¶ 9.

The puddle was near checklane number 12, and in an area running adjacent to a set of checklane counters and the "Food Avenue," a food service area with, among

---

[1] The plaintiff admitted all statements of undisputed fact in the defendant's Local Rule 56(a)(1) Statement (except paragraph six, for which she provided no basis for her denial, so that paragraph is deemed admitted as well, see District of Connecticut Local Rule 56(a)(3)). For the purposes of this Motion for Summary Judgment, the court accepts as true these undisputed facts and views any disputed facts, as well as the entire record, in the light most favorable to O'Leary, the nonmoving party.

1

other things, a self-service beverage fountain.  Id. ¶ 4; Exhibit F to Motion for Summary Judgment ("Wide Angle Video") (Doc. No. 26-6); Plaintiff's Memorandum in Support of Objection to Motion for Summary Judgment ("Pl.'s Mem.") (Doc. No. 38) at 8; Reply to Plaintiff's Objection to Defendant's Motion for Summary Judgment ("Def.'s Reply Mem.") (Doc. No. 41) at 6 (not disputing the plaintiff's assertion).

   Neither party asserts with certainty the length of time that the water was on the floor.  However, a video of the area, where the puddle appears to have been, reflects no spillages that might have caused the puddle for roughly thirty-five seconds prior to the incident.  See Exhibit E to Motion for Summary Judgment ("Checklane 12 Video") (Doc. No. 26-5); Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Pl.'s Mem.") (Doc. No. 26) at 4.  Another video, this one taken with a wide-angle lens from some distance—the widths of at least five checkout counters away—reflects that Target employees walked through or nearby the area of the puddle twelve times in the twenty minutes leading up to the incident.  See Wide Angle Video; Def.'s Mem. at 3, 8.  One employee avers that she "walked through the area where the incident occurred" approximately eight minutes before the fall and saw nothing, see Affidavit of Rose Sherburne (Doc. No. 25-4) ¶ 4; Team Member Witness Statement (Doc. No. 25-3) (she was "on break" at the time); however, taken in the light most favorable to the plaintiff, the security camera footage discredits this account, to the extent it even indicates that the employee was exercising care that might absolve Target of liability, because it is not clear from the video that any employee walks through the relevant area at all, let alone that she does so exercising such care.  See

Wide Angle Video.[2]  This one affidavit—from an employee who was on a break, see Exhibit C to Motion for Summary Judgment (Doc. No. 25-3)—is the only affidavit of an employee who avers having walked through the relevant area prior to the plaintiff's fall; no employee avers having made any inspection.

Target has a policy of assigning employees to particular areas of the store.  See Transcript of Deposition of Michael Dukes (Doc. No. 39-1) at 17, 20.  One of the primary duties of employees is to inspect for spills, debris, and trash, and to clean up such hazards where observed.  Id. at 21.

## II.    STANDARD OF REVIEW

Granting a motion for summary judgment is proper only if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." O'Hara v. Nat'l Union Fire Ins. Co., 642 F.3d 110, 116 (2d Cir. 2011).  Thus, the court's role in deciding such a motion "is to determine whether genuine issues of material fact exist for trial, not to make findings of fact."  Id.  In making this determination, the court "must resolve all ambiguities and draw all inferences against the moving party." Garcia v. Hartford Police Dep't, 706 F.3d 120, 127 (2d Cir. 2013).

The moving party bears the burden of establishing the absence of genuine issues of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).  If the moving party meets that burden, the party opposing the motion will only prevail if it sets forth "specific facts" that demonstrate the existence of "a genuine issue for trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ.

---

[2] The court notes with curiosity that the parties submitted footage of roughly the twenty minutes preceding the incident as shot from a camera fixed at some distance from the location of the incident and only roughly thirty-five seconds of video prior to the incident from a camera much closer and trained directly at the relevant area on the ground.

3

P. 56(e)).

For summary judgment purposes, a genuine issue exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor.  See Rivera v. Rochester Genesee Reg'l Transp. Auth., 702 F.3d 685, 693 (2d Cir. 2012); see also Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that the non-moving party must point to more than a mere "scintilla" of evidence in its favor).  Mere conclusory statements or allegations are not sufficient to defeat a summary judgment motion.  Davis v. N.Y., 316 F.3d 93, 100 (2d Cir. 2002).

## III.   DISCUSSION

O'Leary asserts that Target is liable in negligence for damages arising from her slipping and falling at its Southington, Connecticut location on September 11, 2011. Target's one argument in favor of summary judgment is that, as a matter of undisputed fact, it had no notice of the defect or hazard that caused O'Leary to slip and fall, and that, as a consequence, it had no duty to O'Leary.  The court concludes that a jury could reasonably find that Target did have notice and thus denies the Motion.

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury."  Sturm v. Harb Development, LLC, 298 Conn. 124, 139 (2010).  To establish a duty of care in a premises liability case, a defendant must have—or be imputed—notice of the relevant hazard.  See Kelly v. Stop & Shop, Inc., 281 Conn. 768, 776–77 (2007).  There are, in essence, three ways to establish the requisite notice.  The first is the defendant's actual notice of the defective/dangerous condition.  Id. at 776.  The second is the defendant's constructive

4

notice of the defective/dangerous condition.  Id.  The third, mode-of-operation liability, is of recent vintage.  The Connecticut Supreme Court recognized it in Kelly, and then clarified the doctrine and noted its limits in Fisher v. Big Y Foods, Inc., 298 Conn. 414 (2010).  A plaintiff establishes liability under a mode-of-operation theory by presenting "evidence that the mode of operation of the defendant's business gives rise to a foreseeable risk of injury to customers and that the plaintiff's injury was proximately caused by an accident within the zone of risk."  Kelly, 281 Conn. at 791.

In Fisher, the plaintiff slipped and fell on a puddle in an aisle where fruit syrups were normally stored, apparently from a spill, although no broken or otherwise-opened containers from which the liquid might have spilled were obvious.  See id. at 416–18.  The evidence allowed an inference that such a puddle was fruit syrup.  See id. at 440–41.  However, uncontested evidence adduced at trial established that it was not foreseeable that such spills might occur from the items on the shelves in that aisle.  See id. at 418.

The Fisher Court concluded that a directed verdict in favor of the defendant was appropriate because there was insufficient evidence to support a jury finding of liability on a mode-of-operation theory.  See id. at 441.  It emphasized that something about "the particular method of operation" rather than the "general . . . nature" of an establishment must give rise to the "hazardous condition" that caused the plaintiff's injury.  Id. at 431.  "[A] plaintiff who slips and falls in a grocery store cannot survive summary judgment by merely raising the inference that the substance causing her fall came from within the store; rather, the plaintiff must show that such spills were

5

foreseeable in the specific area where she fell." Id. at 437 (quotation marks omitted; emphasis in original).

The situation here is analogous.  The plaintiff slipped on a puddle in a high-traffic area—a lane that runs between the checkout counters and the "Food Avenue," an area that includes a self-service beverage fountain.  See Wide Angle Video; Pl.'s Mem. at 8; Def.'s Reply Mem. at 6 (not disputing the plaintiff's assertion).  Neither party can say where the puddle originated or how long it was there, although it appears undisputed that it was there for at least thirty-five seconds, the duration (prior to the moment of the incident) of a video in which the relevant area of the floor is directly in view and no cause of a spill in that time period is apparent.  See Checklane 12 Video; Pl.'s Mem. at 4.  Target appears to have a policy of assigning particular employees to particular areas of the store, and among the primary duties of employees is to inspect for spills, debris, and garbage and, when found, to remove these.  Video footage reflects that several Target employees walked near the relevant area leading up to the incident, and one employee specifically avers that she walked through the area when she passed by approximately eight minutes before the incident.  However, the video raises some question as to the credibility of this employee's assertions.

From the facts before the court, a jury could conclude that the particular mode of operation that Target applied in this situation—maintaining a self-service beverage area near a high-traffic area with the observed degree of supervision—"g[a]ve rise to a foreseeable risk of injury to customers and that the plaintiff's injury was proximately caused by an accident within the zone of risk."  Kelly, 281 Conn. at 791.

6

It is possible that a jury could also find a set of facts allowing the conclusion that Target is liable on a theory of constructive notice. At this time, it is unnecessary to reach this issue—which may, in any case, be purely academic.[3]

## IV. CONCLUSION

The Motion for Summary Judgment (Doc. No. 25) is **DENIED**.

**SO ORDERED**.

Dated this 9th day of December 2014 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

[3] As the Connecticut Supreme Court put it when it recognized the rule:

> Consistent with the observation of the Vermont Supreme Court, some courts that have adopted the mode of operation rule have concluded that the owner of a self-service retail establishment reasonably may be deemed to have constructive notice of dangerous, transitory conditions that are likely to occur due to the manner in which the store is operated. Other courts, however, have reasoned that, by selling merchandise or food in a manner that gives rise to regularly occurring hazards, the store itself has created the risk and, therefore, reasonably may be deemed to have actual notice of the hazard. Whether a self-service business is deemed to have constructive or actual notice of hazards that occur regularly due to the fact that its customers are expected to serve themselves, the fundamental rationale underlying the rule is the same: Because the hazard is a foreseeable consequence of the manner in which the business is operated, the business is responsible for implementing reasonable measures to discover and remedy the hazard.

Kelly, 281 Conn. at 780–81 (numerous exemplary citations with corresponding parentheticals omitted).